Good morning, Your Honors. Gerald Claussen for the appellant. This case also involves the Federal Tort Claims Act and specifically the question of whether, under applicable state law, the government employee was in the course and scope of his employment at the time he committed negligence. And at the time that he committed his negligence, he was driving home from the Coast Guard Station where he was assigned to government-owned barracks in Petaluma, which was – Driving on the road. I mean, not to put too fine a point on it. Nobody knows where he was going. But we do know he was on the road that would have gone by the barracks. That's true, although there's no evidence that he was going anywhere but his barracks. But you did say he was driving home. Nobody knows where he was driving. Agreed. Okay. I'd like to focus on the incidental benefit exception, which is the primary exception that we rely on. And under that exception, there are two fundamental requirements as I read the case law. One is that the employer enjoys some incidental benefit based upon a condition that the employer has imposed upon the employment. And secondly, that that impact the commute, or in the words of the Hinojosa court, that it require an extraordinary transit, a special or different commute than would apply to the ordinary workforce. And I believe we have both of those fundamental requirements in this case. First of all, the government imposed a condition that an enlisted person and the Coast Guardsman – it applied to the Coast Guardsman in this case – live in the barracks in Petaluma or forego any compensation for housing. So unless the barracks reached a certain level of occupancy, enlisted personnel were required to live there and not obtain any housing allowance. Because of that condition, any guardsman who chose that alternative was required, implicitly required by the condition of employment, to commute some 18 miles on a narrow, curvy, two-lane rural road in order to get to Bodega Bay Station. And that is something that clearly satisfies the second fundamental requirement of an extraordinary transit. There was no – Why is it extraordinary? Because he could have lived in Petaluma. He could have chosen to. He could have chosen to, or lots of people do. Correct. Well, not a lot of people do, but there are people who do live in Petaluma. Correct. And so what's extraordinary about driving from Petaluma to the ocean? Because ordinary – an ordinary person may choose to do so, but it's not in a position – it's not imposed by the employer. Well, why is the commute imposed by the employer here? I mean, the employer, assuming that he was required to live there, in Hinojosa, he was required to have a car. Correct. In order to do his job, because he had to use the car to go from one of his employer's fields to another to another during the workday. So he had to have his car. Correct. For work. And, therefore, the argument is the incidental benefit related directly to his having to have his own car for work. Here, it's also undisputed, there was no requirement that he have a car for work. Oh, I agree. Yeah. So what I'm trying to focus in on is then what makes this commute any different from an ordinary mortal who has to drive 15 or 20 miles to work? I think the same question could be asked about Hinojosa. What makes that commute any different from any person who has to get to work every morning? Because he had to have his car for work. Well, here — Question about that. In that case. Here, there's equally no question. He did not have to have his car for work. In Hinman. And he could have walked, or he could have ridden a bicycle, or he could have done a million other things, so far as the employer was concerned. Now, maybe as a practical matter, for ease, for whatever, you drive your own car. Correct. Then let's — let me look at Hinman, because you're right, in Hinojosa, as well as in Hunsinger, there was — they needed to have their car at work, so they had to get it there somehow. Right. But in Hinman, it was — it was travel time was compensated by the employer. Right. And the reason was because it was some distance from the employment. And presumably that was the only way the employer was able to entice that employee to come work for him, so he was willing to pay him for gas or time or whatever. Correct. That didn't happen here, either. So there's no — there's no sort of compensation, as it were, for the travel time. Agreed. Okay. So we're back to — we're back to my basic question. But the basic question is, what makes the commute different? I don't see what it does. That's why I'm trying to get you to tell me what makes it different. What makes the commute different in Hinman? There was no requirement that he travel by car. Well, he got paid for it. That makes it different. So the employer obviously thought it was different. Right. Because he got paid to do it, and he got paid for his gas and for his time. But if the employer didn't pay him, wouldn't the commute have been the same? Well, yes. It probably wouldn't have come within the incidental benefit exception, either. Correct. But if, for some reason, the employee said, you don't have to pay me, his commute is still going to be the same. I'm talking about two different requirements, and I think it's important to separate the two. Incidental benefit from the impact on the commute. In our case, the employee was required to commute from Petaluma to Bodega Bay. The employee had no choice. The employee could not live in Bodega Bay or in some other locale closer than Petaluma. So, really, that commute was imposed by the employer. Now, it's true that the employee could choose to not live in Petaluma and forego the housing allowance, but I would submit two things with regard to that. One is that's not really practical. I mean, it still is structured to entice the employee to live at Turok, because you have to forego a very substantial portion of your compensation if you don't choose to live there. And secondly, just as in the other cases, even if that's not the case, the employer has given a choice, has set up terms. If the employee accepts those terms, I think the employer should be held under the incidental benefit rule for the consequences for obtaining that benefit that it offered to the employee, a benefit that it derived out of the employment arrangement that it proposed and offered to the employee. So, in that case, it really is the case that the benefit that the government enjoys from requiring personnel either to live at Turok or to forego their housing allowance does impact the commute. It means that they are going to have employees who have to make that particular commute. Now, as a practical matter, I believe you have to say that they have to make it by car. Yes, they could walk or ride a bicycle, but the question is, is that really practical, 18-mile bicycle ride or an 18-mile walk? I mean, I think as a practical matter, they do. But it's not simply the fact that it has to be made by car. It's also the fact all of the other circumstances surrounding that commute that make it different for somebody who's in an ordinary employment relationship where there are no constraints on where they live. And that, I think, is the crux of the case. So what would happen? Is your answer the same if the Coast Guard said that to work here, you have to live within an 18-mile radius? You're obviously not going to live in the ocean, and so that pretty much means you're going to live in Petaluma. Is it the same without regard to the barracks? The government said you've got to live within an 18-mile radius because we've, you know, just because. I mean, is it the barracks or is it the restriction on where you can live that causes the problem? Well, I think it's the restriction on where you can live. So it's the same. If the government said you've got to live within an 18-mile radius, when you're on leave, you've got to stay within 100 miles so that we can get you back if we need to, which is also in the rule. So basically, do we need the barracks at all in here? Do you need the barracks or do you need just a kind of generalized restriction on how far somebody can go afield from Bodega Bay? I think what to me is missing from your hypothetical is what's the purpose of the restriction because it's hard to analyze whether or what benefit the employer derives from that. Well, we don't want you so far away that you can't get back within a, you know, sort of reasonable period of time if there's an emergency. I mean, that goes along with being in the military. Okay. Then I'd say that, yes, that's a benefit to the employer. But because it's within an 18-mile radius and not outside of one, then my question is, how does that make it different from an ordinary commute? I mean, you'd think most people would live near where they work. The employer is simply saying, we don't want you living, you know, X number of miles further away or further than X number of miles away. That's a difference. If the employer were for some unfathomable reason to say you must live at least 18 miles away, then that would be much more like our case, and in that case I'd say yes. In that case, the employer has said, you have to make a commute that is really in some way different than the ordinary commute, and you've got to do it for us as a condition of employment. And that's basically what the government has done here. Does it matter if it's 18 miles or what if it was just outside the base, but outside, so that you actually had to use some kind of transportation to get there? I think we're getting into an area where it's each of these case turns on their facts, and you're asking, is there a bright line rule? I say, no, there's no bright line rule. I think that if it's outside the base, I'd say most people don't live on the premises where they work, so that's not really a problem. I think each case would, you know, whether it's going to be 5 miles, 10 miles, 15 or 20, could vary depending on other circumstances in the case. And I certainly, there's nothing in the case law that tells me there's a bright line distance at which the court would draw a rule, but in Hinman, the distance was 15 to 20 miles. Well, in Hinman, it was because he got paid for it. Correct. Well, it could have been 50 miles or it could have been 5, but he still got paid for the time he was traveling, and he got paid for some of or most of the expenses of his fuel, right? He got car fare, correct. Correct. And he got paid for his travel time. But if he lived a mile away and it took him 5 minutes to get to work, and so he got paid an extra, you know, wages for an extra 10 minutes a day and whatever minimal amount of gasoline it took to traverse that distance, would the result have been the same in Hinman? I'm not sure it would have been. I think it had to do, the opinion is not clear, but there's an implication to me that the benefit may have kicked in only after a certain distance, but the opinion is not clear. But I have a question in my mind as to whether the mere fact that you're paid travel time, regardless of how short the distance is, means that you're going to come within the incidental benefit rule. There is a case that I believe was cited by the government in its brief, Anderson v. PG&E, where the employee was paid not wages for travel time, but a per diem, more like a travel allowance, and I believe it was $12.50 a day, and the court in that case held that that was not, that did not come within the rule. You know, in this case, while they felt that wasn't nominal, they didn't believe it was enough to really indicate that the employer was getting a substantial benefit. In this case, I don't think there can be any doubt that the government is getting a substantial benefit. I mean, if we're going to measure it in terms of the proportion of their compensation, the housing allowance has to be a very substantial portion of a Coast Guardsman's compensation. So if the choice is either give that up and pay for your own housing or live in the barracks, I think that's going to be a powerful incentive, and the government is going to derive a great benefit from that because they're going to make sure that their housing in Petaluma is fully occupied, or at least close to fully occupied. And that brings the case within the analytical framework of the incidental benefit rule. That plus the community. So how would it change the analysis if it became clear that Mr. Gueman wasn't going to his resident,  and the same accident occurred, in other words, just happened that he had to drive down the same road to the same, through the same area, but he was not going home, he was going to visit his girlfriend. Does that change it? It could, but, and, you know, this was, the government didn't really raise this issue in the court below. No, I don't, I'm just asking you in terms of analysis. Correct. Does it make any difference that he's going to her place rather than his place? I think it could. And there's a body of case law having to do with the going and coming rule that turns primarily on the special mission exception. When an employee is on a special mission for the employer, where they're doing an errand for the employer on the way to or the way home from work, and they do the errand, and then they, instead of going home, they head someplace else. And there's a body of case law that turns on, that deals with the question of when does the employee stop being within the course and scope of his or her employment. I guess that raises the issue, then, where does the benefit to the government come in? From his choice of residence or from the commute? The commute itself has no benefit to the government, is it? No, the commute itself is a benefit to the government only because of the choice of residence, only because you must live here and there's a commute involved. But it still impacts the guardsman's commute, and that's the point. And in your other example, I think it would depend on what was he going to do, because there is also a doctrine, and we alluded to it in our brief, where an employee on the way home may make a side trip, and that can still be included. We would have to look at a lot of facts that aren't in this record because the issue was not raised below. No, no, I'm not saying it should have been or could have been. I'm just asking for the impact on the analysis, whether his destination matters. I think it could. I think the answer is it could, but we don't know how because on this record we can't say how. And I'd like to reserve the balance of my time. Thank you. Good morning. May it please the Court, my name is Claire Cormier. I'm an assistant United States attorney, and I represent the United States of America in this case. I'd like to go back to an issue that Judge Nelson just raised. He stated that the commute itself is no benefit to the government. That is, I think, the key issue here. In the cases, the tort cases, where the State of California has found, responding to superior liability under scope of employment, in cases involving a commute,  the commute of bringing a car that can be used to go from site to site during the workday. The difficulty here, though, is that the commute is required because the housing is required. Well, does that put it in a different light or possibly in a different light? Well, in the Heartline case, which just came out since the briefing was closed on this case, it quotes from an earlier California case, the Church v. Arco case, where it states that if the commute by car is convenient or even essential, that doesn't bring it within an exception to the going and coming rule. So the fact that there may or may not have been practical alternatives to driving his car to get from Turok to the Bodega Bay Station, that doesn't take the commute itself into the realm where liability has been found for the employer in the past. One other issue in this case I think is very important is the distinction between the workers' compensation context and the tort context. The cases are very clear in stating, particularly the recent cases, that the evaluation of whether an event falls within the scope of employment under tort law is a much more restrictive standard than the more liberal view of arising out of or in the course of employment under workers' compensation law. For example, there are cases where an employee gets workers' compensation benefits, but then their employer is not held liable in a related tort case for the same event. There are different standards. There are different goals. In the Sunderland case, it describes the liberal construction that's required by statute for workers' compensation law and that there are differing purposes for them. Workers' compensation and respondeat superior law are driven in opposite directions based on differing policy considerations. So to the extent that the appellant is relying on cases such as Hinojosa in the workers' compensation context, those are really, while there's some crossover in the evaluation of the issues, they are not the same standards. And if you look at the cases under tort law that have been decided in the commute context, we have the Harvey case where the employee was going from an Arizona construction site to a California home for the weekend. He carried tools. He was bringing a co-employee back with him, and he was often asked to hire other employees while he was in California. He was furnished gasoline. These all bring the commute itself within the benefit to the employer. In the Hinman case, also tort context commute case, the employer chose to bring the travel time within the workday by contract. That is not the case here. In the Hunsaker case, the employee worked at the office and also in the field. Having the car was necessary, so the commute became a necessary part of the equation. In the Lazar case, the employee was driving the employer's vehicle. He regularly took it home. He was always on call. He carried tools in the truck. So, again, the vehicle and the commute itself becomes part of the benefit to the employee. In the Tarasco case, where the court of appeal found that there was possible scope and thus remanded to the superior court, the employee was returning to headquarters to return tools, and the court found that his duties required the use of the vehicle. Again, none of Seaman Guman's duties required the use of the vehicle during the workday. So even if one were to say he was required to live at 2 Rock, and even if one were to say that there was no practical alternative to driving, the drive itself was not something that concerned the Coast Guard. While it wasn't discussed this morning, the appellant also relies in part on the bunkhouse rule. Again, this is something that arises in workers' compensation situations, such as the Reinhart case, the Dollar Hyde case. But although in the Dollar Hyde case it also mentions, in addition to bunkhouse, the issue of going to collect compensation, it's really not clear whether the bunkhouse rule applies at all under California tort law. It is mentioned in the Tarasco case. However, in that case, there's also the returning of tools, employer-provided gasoline, the duties requiring the use of the vehicle. So while there may have been a bunkhouse aspect to it, it would appear that it was the combination of factors that led to the liability determination there. I think it's important in looking at the California cases to look more to the facts than the labels that are used. Appellant's counsel mentioned that these are fact-specific evaluations, and sometimes a term is put out there in a case. For example, the bunkhouse rule is mentioned in Tarasco, but all these other parts are also mentioned. So I think it's an error to say that that Tarasco case was decided on the basis of the bunkhouse rule. I think you have to look at the totality of the factors. In this case, Seaman Gueman was driving possibly home. We don't know. He died in the accident. No one can ask him. He was driving his own car, not a company vehicle. He was not paid for his travel time. He was not paid any travel expenses. He was not required to go back to the barracks at that time. He was on liberty from that Friday afternoon when the accident happened until the following Monday morning. He could have gone to visit his girlfriend for the weekend. We just don't know where he was going. But even if we assume that he was required to live there and that that's where he was going, this is still a going and coming case, and none of the exceptions really apply here. If the Court has no further questions, I'll submit. Thank you. Thank you for your argument. Mr. Clausen. If in Hinojosa the employee took a bus to work and then went from field to field by calling a taxi cab, would the employer have cared? No. The employer, it was not the commute in the car that the employer cared about. The same is true in Hunsinger. If the employee got to work by some other means and then rented a car to go make his sales calls, the employer wouldn't have cared. So those cases are no different here. It was not the fact that the employer wanted them commuting in a car at all. So to say that the commute itself was the benefit to the employer is not the case there. It was an incidental benefit because they had to have their car there. And the same is true here. It's an incidental benefit because he had to live at Petaluma and there was no other means to get to work or back home from work. As far as the workers' comp versus third-party liability cases go, we have not really relied on any rule that has not been stated in a third-party liability case. The incidental benefit case, Hinman, was a third-party liability case. The bunkhouse rule, we rely on Tarasco, which is a third-party liability case. Hinojosa is a workers' comp case. But we're not relying on that as a factual analog to our case. We are relying on it for the refinement of the incidental benefit rule. But in stating that refinement, the Court cites Hinman and other third-party liability cases. And moreover, to me, what the Court is saying there is that it's not going to apply in an ordinary commute case. It's going to apply where, because of a condition imposed on the employment, some kind of extraordinary commute is required. That's not a more liberal rule.  In this case, clearly, there was a benefit for the government that was necessitated by a condition imposed upon the employment, and it was for that reason that Guardsman Guman was undertaking this 18-mile commute between Petaluma and Bodega Bay. I take it this accident was his fault. Was Guman's fault. The indications are that it was. He crossed over the line. Head-on collusion. Okay. Thank you for your argument. Thank you. Any matter just argued will be submitted.
judges: Rymer, T.G. Nelson, King